So, Mr. Markovitch. Yes, hello. Okay, I just want to make sure you're reserving three minutes for rebuttal. Yes, I am. Okay, when you are ready. Okay, thank you. May it please the Court. First, I'd just like to say I write much better than I speak, so I'm relying primarily on the briefs that have already been submitted to the Court. I just want to eliminate a few points here. Federal jurisdiction mandated by Congress as a supreme law of the land is not subject to judicial amendment through commonwealth principles of comity among state courts or even among federal courts, or denied for considerations of equity, the convenience of the district court, or lack of sympathy with the plaintiff. Every American citizen, including trustee, has a right to be heard in federal court when jurisdiction is conferred by statute, except in the extraordinary and narrow circumstances which are certainly not present here. Okay, can I take a step back? Can we take a step back? My understanding is that we are here for two reasons. Your client objects to the charity selected by Ms. Grossman, and your client contends that there's not enough money in the trust to pay the legal fees he is owed. Do I have that right? No, this is about removal, Your Honor. He tried to remove this case to federal court. He's a California resident, and it was remanded, and then, again, the judge applied Colorado River, Colorado River inappropriately, we believe. You'll tell us how it was inappropriate. Yeah, now, if you get down to the nitty-gritty of what happened, and I can summarize there, maybe that'll tell the court. Mr. Grossman died quite a long time ago, and my client was the trustee of both, I believe, his estate and certainly the trust that was created from his estate, the Grossman Trust. That was in, I think it was 1999. So that's closed. What happened is Mr. Grossman's wife then subsequently passed away a few years ago, and in her will, she had left her property to this entity, AIIS is the acronym we're using, and effectively, she's trying to change what happened in the probating of his will. That's what's happening here. My client then tried to get this heard in federal court because he's not a New York resident, and he felt he would have a fairer forum in federal court. Okay, but his objection about the, he, does he believe that the trust owes him any money? Yes, he has, I believe, somewhere to around $900,000, maybe. And does he have contemporaneous accounts for that? Does he have contemporaneous records indicating that that is what he's owed? I don't believe he does, Your Honor, yes. Did he indicate to your opposing counsel that he believes that the trust owes him $900,000? Your Honor, I did not handle the trial court case here. Well, the reason I'm asking is because I am trying, we have a problem we need to solve here, and what I am interested in figuring out is let's say that your client is ultimately successful, and he gets his $900,000 back from the first $900,000 in residuals that come. There's going to be money coming in at some point. Would it be your client's position that that then goes to AIIS? No, my client believes that based upon the Grossman will, it's supposed to go to fund the type of music that Mr. Grossman loved and what he developed in Woodstock. I mean, I'm not sure if you understand. Right, no, I know, I actually feel like I, well, maybe I don't understand, but I believe that I understand. What I am trying to figure out is who does your client think is the one that gets to determine what Mr. Grossman would have picked? Who would determine? If not his wife, who his will said that she could, right? Because your objection is not to her right to do it. Your objection is to who she, or your client's objection is to who she picked. And she's not here to pick another person. So what do we do with these residuals? Right, but isn't that a group we're calling a fraud upon the power, because she ended up picking a type of music that had actually nothing to do with what he had picked. Okay, but the question is, so your position, or your client's position, is who is the one that gets to select what one does with the residuals? My client's position is that Mr. Grossman's will already selected that, and we need to be consistent with his will. And if his wife had picked anything that was at all consistent with his will, we wouldn't be here on this issue. The problem is she picked West Bengali folk music, which is Indian folk music over from the subcontinent. It has nothing to do with what Mr. Grossman did. Mr. Grossman is a big reason for the fact that there was the Woodstock Festival in 1969. He's the one who got Bob Dylan. Would it be your client's position that your client gets to determine who is most consistent with Mr. Hoffman's wishes, Mr. Grossman's wishes? If it were my client who were allowed to choose, obviously. No, no, no, no, no. My question is, who does your client think gets to make that call, if not his widow? And importantly, who does he think is responsible for paying him? And when that amount is satisfied, where does the rest of the money get to go? Okay, so the second part of the question, the money should go as designated in the Grossman will, which would be to support this type of music in the Woodstock area. So we have no disagreement on that. That's what we believe. It's just that it's been absconded by— I'm sorry, I'm going to switch gears. Can you point to any Second Circuit cases that hold that the probate exception is a subject matter jurisdiction limitation and not an abstention doctrine? Off the top of my head, no, I cannot. So where is the support for your suggestion about it being improper to remove? Improper, not what we're saying. It should have been removed. We removed. And where is—how would one—okay, maybe I'll ask the question differently. How would you respond to the suggestion that there is a probate exception to subject matter jurisdiction limitation? That gets into the race versus brand issue. And this was not property that was subject to the probate court's jurisdiction at the time that they were exercising the jurisdiction. This had been decided in 1999. It was trust assets, and it was intangible trust assets, which is receivables from, I believe, Sony and Warner Brothers. You've got 30 seconds, officer. You're welcome to use it in your choice. Uh, no, that's all. I can wait for my three-minute rebuttal. Thank you. Okay. And then we have Mr. Coffey and Ms. Knappen. Is that right? Am I pronouncing that correctly? Thank you, Your Honor. It's pronounced N-O-V-E-P silent, but there's no way you could possibly know that, so please don't worry about it. No, no, no. Good, good, good. Please. It's Mr. Coffey. Are you going first? Please. Yes, Your Honor. Thank you. May it please the court, Daniel Coffey, for America, a group of Indian studies. The court, although correctly remanded action number one to serve your court under the probate exception, you dismissed action number two, which was a lawsuit filed by Ms. Knappen. Action number two was correctly dismissed under the Palo Alto River Extension Principle. We're actually having a hard time hearing you. Okay, I'm sorry. Is this better? Yes, it is. Thank you. The first action was remanded under probate exception, and the second action, which was Hoffman's duplicitous lawsuit, was properly dismissed under Palo Alto River Extension. I just want to first note that Hoffman refers to himself as trustee. Mr. Hoffman was removed as trustee October 21, 2021, by the surrogate court. That order was not executed or overturned. But we refer to Mr. Hoffman as a forward trustee. Your Honor was asking about whether Hoffman gets to make those, but given he's no longer even a trustee, of course, he does that. He doesn't have a decision. The race, which we'll hear about, is the Albuquerque Trust, which is under the control of the surrogate court, which is why the court below Judge Sanders and Stafford picked this matter back to surrogate court. The issue of whether the wishes of Albert Hoffman were legitimate were decided by the… One can barely hear you. I hope every other word that you're saying are the important ones, because those are the ones I can hear. I apologize, Your Honor. Is this better? Yes, I would advise just in case that you speak a little slower because of the tech. Please. I apologize. The third department in June of this year already decided that the bequest made by Mr. Grossman was legitimate, and it found that the surrogate court did have a subject matter jurisdiction here to matter. So that's already been decided. The only issue for this court is whether the actions of the surrogate court, where it's been litigated for two years, or whether it's going to come back to federal court and give Mr. Hoffman a second bite at the apple to re-litigate issues that have already been decided. Now, under the pro-rate exception, as Your Honors wrote, under Lefkowitz, there are three prongs. The first one is not relevant, but the second one is administrating an estate. The core of this matter is the administration of Sally's estate and her wishes to give the money to my client. So that weighs in favor of the surrogate court. And the second is the in-run jurisdiction over property and the custody of the estate. So can I ask, is it your position that it is a subject matter jurisdiction or an abstention doctrine? And does it matter? Well, pro-rate exception is subject matter jurisdiction, we argue. And then Colorado River, which is how the judge handled the second case, is an abstention doctrine. So action number one is the subject matter jurisdiction that the federal lacks jurisdiction. And once the court took action number one to pro-rate court, the Northern District found that action number two should be dismissed because it's duplicative and acts before intending to serve the court. And is that Colorado River? Correct. Action number two is Colorado River. There's six prongs. I won't go through all of them. There was a race over which the courts had to suit jurisdiction. Could there be piecemeal litigation? That's exactly what would happen if this court were to now have jurisdiction over a case that's already been litigated in surrogate court. The issue is Mr. Hoffman's forward property, Hoffman, whatever money he's owed, has been vigorously litigated in surrogate court. And so he has a forum in which to ask for his money. And that's considered that there's been a potential movement in that surrogate court case. So can you answer for me a question about how the probate court would be able to dispose of Mr. Hoffman's potential claims for fees related to his administration of the trust when he was a trustee? Sure. The money that I owe my client would be less any fee than the trustee. So any money that goes to Mr. Hoffman for dollar reduces the money my client gets. So that whole issue has to be handled by the surrogate court. I'm sorry, you said it could be easily handled. Is that what you said? It is being handled by the surrogate court. The $900,000 or whatever he's claiming, and there is no support for it, but he's claiming $900,000 in surrogate court. And that's an adequate forum for him to do certain things. Those fees, the decision on those fees is subject to Colorado River? Correct. Well, Colorado River says that action number two was properly dismissed. Colorado River Extension says the federal court should not hold a court out of case that's already been dismissed. Well, I couldn't hear a word of that. Why don't you try again? We're having a hard time hearing you. Please. Sure. Colorado River says that this court should not have litigation over a case that's already pending in another court. So there's no reason to have action number two go forward since action number one was kicked back to surrogate. Even though it's an in personam cause of action and not an in rem cause of action. Well, respectfully, I would disagree. It's in personam. In personam would be if I was suing Hoffman for money. Say it again slowly. I couldn't hear you. This is not an in personam case, Your Honor. It's an in rem. The trust is in rem that is being litigated. And that includes fees. It's in rem. Yes, Your Honor. Every dollar from the trust that gets paid to Hoffman comes out of the trust and not my trust. That is not in personam. In personam would be if Hoffman was suing Huffman personally or I was suing Hoffman personally. That's in personam. This is not an in personam matter. The whole fight is over who gets the money that is in the light of Sally's passing. Just to respond to a couple of the questions that Your Honor had for Hoffman's attorney, Sally's right was unrestricted. So Mr. Hoffman, the former trustee, does not have the right to second guess Sally's wishes through his deceit. I'll let the Attorney General speak to that. But Sally is gone. Sally specifically said in the will that she wanted the money to go to my client. That should be upheld. It's not up to Mr. Hoffman to second guess Sally's wishes. Albert gave her the unrestricted right to give the money to any non-profit. He did so and the third department has already affirmed that. So can I ask, I'm not saying that we will, but if we disagree with you as to whether or not the fees are in personam versus in rem, does that change the outcome of the case for your client or can your client still prevail? My client still prevails. Again, the race that we're talking about is still the trust. So even if your honor were to find that this was some kind of a mixture of in rem and in personam, it's still proper for the appropriate exception to take this thing back to the circuit court. The second problem of appropriate exception is administration of the estate. The core of this matter is the administration of the estate. Even if your honor finds in personam, and again I respectfully believe that the court found that the claim is not in personam, the claim is a claim against the trust. It's not an in personam claim. But even if your honor found that, it still should be. Thank you. Okay. I will say, counsel, before you proceed, is it possible for you to, and we're not taking this out of your time, can you put on headphones? Because we're wondering if that's why we're not able to hear your co-counsel. No, I'm sorry. No, no, no. You've still got a colleague with three minutes to go. So you've got them on. Okay. Let's see if that helps. Good morning, your honors. Kate Dunn here from the Attorney General's office. Your honors, I want to add a little information regarding this question of fees that are owed to the trustee. Discovery has been held in surrogate's court. The former trustee has filed what's called a petition for accounting, which sets forth everything that's happened with the trust under his administration. I request fees. Discovery has been held. Dispositive motions on that petition are due on October 30th. So that is very far advanced in the state court. And as has already been mentioned, the state intermediate appellate court has already determined that surrogate's court properly had jurisdiction over the trust and determined that Ms. Grossman's appointment of the property, the principle of that trust was proper and in compliance with both of the wills. So that's already been decided. So in terms of the question of how far advanced the state court litigation is, it's extremely, it's in fact concluded as to the question of the exercise of the path of appointment. So may I ask, do you have a position on whether or not the probate exception is a subject matter jurisdiction doctrine or an abstention doctrine? I'm going to be frank here. I don't because that question isn't properly before this court. A remand order is not appealable under 28 U.S.C. 1447d. Plaintiff argues, relies on cases saying that it doesn't, that 1447d doesn't apply. Those cases are from before the statute was amended. And so they simply do not apply anymore. The reasoning in those cases is no longer valid because the statute doesn't read the same way anymore. So the remand to surrogate's court, it's not a reviewable order. Regardless, and we will ask for the question of whether the second action brought directly by Mr. Hoffman was properly dismissed on abstention grounds. We concur with the institute's arguments. But in short, the underlying substantive matter is extremely far advanced in state court. The federal actions, there's no reason for them to be here. And in fact, one of these orders is not even reviewable upon appeal. Unless the court has further questions, we will rest on our brief. Thank you. Mr. Markovic, you've got three minutes. Right, okay, thank you. So I've heard a lot about how advanced the surrogate's court now is. But we need to remember that surrogate's court was not advanced at the time this removal was done, nor was it advanced at the time that Mr. Hoffman filed the second action. It had done virtually nothing up until that point. So it's mixing apples and oranges here. The fact that the surrogate's court has continued to work since the mistakes were made on those two federal decisions doesn't justify the fact that surrogate's court should then keep doing what they're doing. That's all. We rest, Your Honor. Okay, we'll take the case under advisement. Thank you. Your Honor. I think this is one of the best lessons I've learned about coming into court and arguing so the judges can understand what you're saying. They might consider it next time. Okay, thank you.